08-2436-cv
Vivenzio v.
City of

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2008

(Argued: May 22, 2009                    Decided: July 1, 2010)

Docket No. 08-2436-cv

_____

DAVID VIVENZIO, SCOTT WILKINSON,

Plaintiffs-Appellants,

JOHN A. FINOCCHIO, JR.,

Plaintiff,

- v. -

CITY OF SYRACUSE,

Defendant-Appellee,

MATTHEW J. DRISCOLL, Mayor of the City of Syracuse, JOHN T. COWIN, As Chief of the City of Syracuse Fire Department, ONONDAGA COUNTY PERSONNEL DEPARTMENT, ELAINE L. WALTER, Commissioner of the Onondaga County Personnel Department,

Defendants.

_____

Before:    KEARSE and LIVINGSTON, Circuit Judges, VITALIANO,

District Judge*.

_____

*    Honorable Eric N. Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from so much of a judgment of the United States District Court for the Northern District of New York, David N. Hurd, Judge, as summarily dismissed appellants' claims against appellee City of Syracuse for racial discrimination in employment, ruling that the City was permitted to take race into account under a 1980 consent decree designed to have the percentage of City firefighters who were African Americans approximate the percentage of African Americans in the City's labor pool. See 545 F.Supp.2d 241 (2008).

Vacated and remanded.

Judge Livingston concurs, in a separate opinion joined by Judge Vitaliano.

> TIMOTHY J. FENNELL, Oswego, New York (Amdursky, Pelky, Fennell & Wallen, Oswego, New York, on the brief), for Plaintiffs-Appellants.
>
> NANCY JEAN LARSON, Assistant Corporation Counsel, Syracuse, New York (Rory A. McMahon, Corporation Counsel of the City of Syracuse, Syracuse, New York, on the brief), for Defendant-Appellee.

KEARSE, Circuit Judge:

Plaintiffs David Vivenzio and Scott Wilkinson, Caucasian applicants for positions in the fire department of defendant City of Syracuse ("City"), appeal from so much of a judgment of the United States District Court for the Northern District of New York, David N. Hurd, Judge, as granted summary judgment against them, and denied summary judgment in their favor, on their claims

that the City denied their employment applications on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq. The district court, in an opinion dated April 9, 2008, reported at 545 F.Supp.2d 241 ("Vivenzio I"), granted summary judgment in favor of the City on the ground that the City was permitted to take race into account under a 1980 consent decree designed to have the percentage of City firefighters who were African Americans approximate the percentage of African Americans in the City's labor pool. On appeal, Vivenzio and Wilkinson contend principally that the district court erred in crediting the City's reliance on the consent decree because that decree is no longer narrowly tailored to meet its goals and should have been deemed to have expired because its goals had been met prior to the rejection of plaintiffs' applications. For the reasons that follow, we conclude that the present record does not establish as a matter of law that the City's continued reliance on racial considerations in the hiring of firefighters was justified by the consent decree, and we therefore vacate the judgment of the district court to the extent that it dismissed the claims of Vivenzio and Wilkinson against the City, and we remand for further proceedings.

# I.  BACKGROUND

The provenance of this dispute is the desire of the City, some three decades ago, to increase, *inter alia*, the number of African Americans in the City of Syracuse Fire Department ("SFD"). The means by which this was to be achieved was a consent decree entered in 1980 ("Consent Decree" or "Decree") in two consolidated cases in the Northern District of New York, *Alexander v. Bahou*, No. 78-CV-392, and *United States v. City of Syracuse*, No. 80-CV-53, *see Alexander v. Bahou*, 86 F.R.D. 194 (N.D.N.Y. 1980).

A.  The 1980 Consent Decree and the City's Ensuing Hiring for SFD

The events leading to the entry of the Consent Decree appear to be undisputed and were described in *Vivenzio I*, in pertinent part, as follows:

> In 1978, African Americans comprised only 1% of the City's fire department . . . . The City sought to increase the percentages of African Americans . . . ; however, provisions of the New York Civil Service Law limited its control over the hiring process. Specifically, all persons interested in [such] positions were required to take a civil service examination prepared, administered, and graded by New York State ("State"). [The Onondaga County Personnel Department] then compiled a list of Onondaga County ("County") residents who passed the civil service examination, ranking them based on their examination scores. Such lists were known as "eligible lists." Under Civil Service Law § 61(1), local fire . . . departments were required to hire from among the three highest scoring candidates on the list--referred to as the "rule of three." Application of the rule of three almost always resulted in the hiring of white males for City firefighter . . . positions. However, if the City

- 4 -

deviated from the process just described, its officials would be subject to civil and criminal liability under the Civil Service Law.

545 F.Supp.2d at 246. Accordingly, City officials commenced an action, Alexander v. Bahou, No. 78-CV-392, against the New York State Civil Service Commission and the Commissioner of the Onondaga County Department of Personnel, seeking

declaratory and injunctive relief prohibiting the State and County from administering the existing civil service examination--which, the City believed, disproportionately disqualified or otherwise devalued African American . . . examinees in violation of federal and state employment discrimination laws--and directing them to implement new, nondiscriminatory examinations.

Vivenzio I, 545 F.Supp.2d at 247. While the City's lawsuit was pending, the United States Department of Justice began an investigation and eventually commenced its own action under Title VII, United States v. City of Syracuse, 80-CV-53, alleging that there had been discrimination in, inter alia, the past hiring of entry-level firefighters in SFD.

After a period of intensive negotiations, the parties agreed to settle both lawsuits. The district court granted a motion to consolidate the actions and approved the parties' agreements, which were embodied in the Consent Decree. The Decree provided in part that

6. The City desires to and shall adopt, and use its good faith efforts to achieve, the long-term goal to utilize blacks in all ranks within [SFD] . . . in numbers approximating their representation within the labor force which is available for employment in the City of Syracuse and their interest in, and ability to qualify for, such positions. Subject to the foregoing sentence, the parties agree that the long-

- 5 -

term goal for blacks in each rank is approximately 10%.

7. To achieve this long-term goal, and subject to the availability of qualified black applicants on the appropriate eligible list, the City desires to and shall seek, annually, commencing with the entry of this decree, on an interim basis to achieve the goal of hiring blacks for 25% of all entry-level firefighter . . . hires. To the extent necessary to meet the annual interim goal, the City desires to and shall grant a preference to blacks who have successfully passed the applicable examinations in a manner analogous, but not identical, to the preference that has historically been given to City residents in accordance with Civil Service Law § 23(4-a) as currently enacted.

(Consent Decree art. V, ¶¶ 6-7.) The Decree provided that after it had been in effect for five years any party could move for its dissolution. (Consent Decree art. V, ¶ 18.) In approving the Decree, the district court noted that "both actions allege[d] discriminatory hiring practices with respect to the . . . fire department[], both actions allege[d] that the applicable civil service examinations [we]re not job related, both actions proclaim[ed] that the civil service examinations ha[d] adverse impact upon minorities . . . ." Alexander v. Bahou, 86 F.R.D. at 198. The court found that, although the Consent Decree did not contain any admission of liability, the statistical evidence presented to the court demonstrated "a pattern of long continued and egregious racial discrimination." Id. at 199. Thus, the court noted that although the 1970 census data showed that African Americans "comprise[d] 10% of the civilian labor force in Syracuse" and SFD employed 478 firefighters, only four were African Americans. Id.

- 6 -

Civil service examinations for firefighter positions in municipalities in Onondaga County, New York, are administered by the Onondaga County Personnel Department ("OCPD"). After entry of the Consent Decree, when the City requested lists of persons eligible for entry-level firefighter positions, OCPD certified two lists--one "referred to as the 'general list'; and another containing the names of eligible African American candidates, inartfully referred to as the 'black list,'" Vivenzio I, 545 F.Supp.2d at 247. In most of the years from 1981 through 2005, the City hired firefighters from both lists.

According to the statistics presented to the district court in the present case, the City in the 1980s hired 144 new firefighters, of whom 41, or about 28.5%, were African American. In that decade, the approximate percentage of African Americans hired ranged from 7.7% (in 1984) to 47.1% (in 1981). In the 1990s, the City hired 106 new firefighters, of whom 15, or about 14.2%, were African American. The percentage of African Americans hired in the 1990s ranged from 0% (in 1992, 1993, 1995, and 1999) to 25% (in 1994). In 2000, 2001, and 2002, the City hired a total of 55 new firefighters, of whom 14, or about 25.45%, were African American. By April 2004, approximately 16.58% of the City's firefighters were African American.

B. The City's Hiring in 2004 and 2005, and the Present Claims

In 2002, OCPD administered a new civil service examination for entry-level firefighter positions. Vivenzio and

- 7 -

Wilkinson took the examination, and each scored 95. The maximum possible was 110 points, comprising 100 points for a perfect test score and additional points for the applicant's status as a veteran (five points) or a disabled veteran (10 points). The City hired no firefighters in 2003.

In April 2004, the City asked OCPD for a certified list of eligible persons for entry-level firefighter positions, and OCPD provided, from the 2002 examination, a "general list" and a "black list" of certified eligible candidates. From these lists, the City in 2004 hired 24 firefighters; 10 were African Americans, nine of whom were selected from the "black list"; one of the nine had a score of 85. Vivenzio and Wilkinson were not hired; their scores on the civil service examination were higher than the scores of three candidates hired from the "black list." In 2005, the City again requested a certified list of eligible candidates from the 2002 examination. After again receiving two lists from OCPD, the City hired a total of 25 firefighters, six of whom were selected from the "black list." Vivenzio and Wilkinson were not hired; their civil service test scores were higher than those of at least five candidates hired from the "black list."

Vivenzio, Wilkinson, and several others commenced the present action in 2005 against the City, Mayor Matthew J. Driscoll, and SFD Chief John T. Cowin (collectively the "City defendants"), and against OCPD and its Commissioner Elaine L. Walter (collectively the "County defendants"). Plaintiffs alleged that the City's hiring of "black list" applicants who

scored lower than plaintiffs violated plaintiffs' rights under the Equal Protection Clause, Title VII, § 1981, and state law. They contended that the Consent Decree had expired or should be deemed to have expired because its goals had been met prior to 2004. Plaintiff John A. Finocchio, Jr., asserted, in addition, a claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Eventually, most of the plaintiffs withdrew or were dismissed from the case, leaving only Vivenzio, Wilkinson, and Finocchio (the "remaining plaintiffs").

After completion of discovery, Vivenzio and Wilkinson moved for summary judgment in their favor; both groups of defendants moved for summary judgment dismissing all of the claims of the remaining plaintiffs. Defendants, in support of their motions to dismiss, argued, inter alia, (1) that the remaining plaintiffs lacked standing to challenge the City's hiring decisions because, principally in light of their test scores, they would not have been hired even had there been no Consent Decree, and (2) that the City's reliance on the Consent Decree constituted a legitimate nondiscriminatory reason for its hiring decisions because the goals of the Consent Decree had not been achieved.

Vivenzio and Wilkinson, in support of their motion for summary judgment in their favor and--joined by Finocchio--in opposition to defendants' motion, cited principally to deposition testimony of SFD Chief Cowin and Mayor Driscoll and to a 2002 letter from Cowin to Driscoll. Cowin had been SFD's first deputy chief from 2000 until he was appointed chief in mid-2001. Cowin

testified that he believed the Consent Decree required that at least 25% of each hiring class had to be African American (see Deposition of John T. Cowin ("Cowin Dep.") at 13), or at least that SFD should average "25 percent [African Americans] overall in combined classes," hiring more than 25% African Americans in one year to compensate for hiring fewer than that percentage in a prior year (id. at 35). He testified that when he was involved in hiring as first deputy chief, he had believed that the goal under the Consent Decree was that African Americans employed by SFD should approximate "the [African American] population of the city, not the work force." (Id. at 40.) Cowin had not been aware that the appropriate frame of reference was the labor force until the present action was commenced and he reviewed the Consent Decree. (See id. at 41.) Since gaining that awareness, he had not sought to learn the percentage of African Americans in the City's labor pool. (See id.; id. at 38 (as chief, Cowin had not "ever . . . made an effort to determine what the labor pool was for black males in the City of Syracuse").) And aside from hearing a statement by a City attorney on the day before his deposition, Cowin was not aware of any effort by the mayor's office or any other City office to ascertain the percentage of African Americans in the City's labor pool. (See id. at 43-44.)

Driscoll, who had been the City's mayor since July 2001, testified that he had never reviewed the Consent Decree (Deposition of Matthew J. Driscoll at 4, 15), was not familiar with its specific goals (see id. at 16), and did not know the

- 10 -

current racial makeup of the fire department (see id.). He testified that his goal was "[t]o have a fire department that reflects the diversity of the City in which we serve." (Id.)

Vivenzio and Wilkinson also presented a letter from Chief Cowin to Mayor Driscoll dated May 17, 2002 ("2002 Cowin Letter" or "Letter"), which stated that "[a]pproximately 15% of the sworn members of the Syracuse Fire Department are black males. We have met and exceeded the goals of the consent decree in every way."

C.   The Decision of the District Court

In Vivenzio I, the district court denied the motion of Vivenzio and Wilkinson for summary judgment in their favor. Although rejecting defendants' contention that Vivenzio and Wilkinson lacked standing to bring this action because of their test-score rankings, the court granted the summary judgment motion of the County defendants in its entirety; and it granted the City defendants' motion except to the extent that it sought dismissal of Finocchio's ADEA claim against the City. In concluding that Vivenzio, Wilkinson, and Finocchio had standing, the court noted that

> [w]hen a plaintiff challenges a race-conscious
> affirmative action program, the injury-in-fact is the
> denial of equal treatment while competing for the
> desired benefit, not the denial of the desired
> benefit itself. See Ne. Fla. Chapter of the
> Associated Gen. Contractors of Am. v. City of
> Jacksonville, 508 U.S. 656, 666, 113 S.Ct. 2297, 124
> L.Ed.2d 586 (1993); Jana-Rock Constr., Inc. v. N.Y.
> State Dep't of Econ. Dev., 438 F.3d 195, 204 (2d Cir.
> 2006). More specifically,

- 11 -

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

Ne. Fla. Chapter, 508 U.S. at 666, 113 S.Ct. at 2303. Vivenzio I, 545 F.Supp.2d at 249.

In discussing the merits of the race discrimination claims, the court began by noting that plaintiffs' fundamental contention was that the goals of the Consent Decree had been met prior to the 2004 and 2005 hirings, not that the Decree itself was unconstitutional:

> It should be noted, at the outset, that plaintiffs do not challenge the constitutionality of the consent decree. While plaintiffs vacillate between inconsistent positions and at times employ language hinting at a constitutional challenge, they concede that "[a]t the time the Consent Decree was entered, it complied with the constitutional requirement that it be narrowly tailored to meet a compelling governmental interest." (Pls.' Mem. in Supp. 14.)

Vivenzio I, 545 F.Supp.2d at 250 n.2 (emphases ours).

The court concluded that plaintiffs' race discrimination claims should be dismissed because the Consent Decree remained in effect and there was no showing that its goals had been met:

> In this case, the undisputed facts confirm that plaintiffs have made out a prima facie case of discrimination. Moreover, City defendants have asserted as a legitimate nondiscriminatory reason their compliance with the affirmative action plan delineated in the consent decree. Thus, the burden

- 12 -

rests with plaintiffs to demonstrate that the consent decree was not viable at the time of the City's 2004 and 2005 hiring decisions.

There are two problems with plaintiffs' argument that the consent decree was not viable in 2004 and 2005. <u>First</u>, the consent decree never has been formally dissolved by the parties, the Court, or any other entity with the authority to do so. Nor has the consent decree dissolved by operation of its own terms. The consent decree does not contain terms that provide for automatic dissolution upon the satisfaction of its goals, after a certain period of time, or for any other reason.

<u>Second</u>, even assuming that, by its terms, the consent decree automatically dissolved or otherwise was rendered unviable upon the satisfaction of its goals, its goals have not been met. The consent decree explicitly provides that its goal is "to utilize blacks in all ranks within the fire and police departments <u>in numbers approximating their representation within the labor force</u> which is available for employment in the City of Syracuse. . . . <u>Subject to the foregoing sentence</u>, the parties agree that the long-term goal for blacks in each rank is approximately 10%." (County Defs.' Notice of Mot. Ex. A at 13 (emphasis added).) The first portion of that excerpt, as well as the limiting language in the second portion--"[s]ubject to the foregoing sentence"--makes clear that the overriding goal of the consent decree is that the percentage of African Americans in the fire department approximate the percentage of African Americans in the City's labor force. Thus, the consent decree does not, as plaintiffs suggest, set a firm quota of 10%. This is further supported by the Court's acknowledgment, in the memorandum-decision and order approving the consent decree, that the 10% figure was based on census data showing that African Americans made up approximately 10% of the City's labor pool in 1970. <u>See</u> <u>Alexander v. Bahou</u>, 86 F.R.D. 194, 199 (N.D.N.Y.1980).

While plaintiffs have shown that African Americans made up 16.58% of the City's fire department just prior to the 2004 hirings, they have not shown that that figure approximated the percentage of African Americans in the City's labor pool. Indeed, evidence that African Americans made up 25.3% of the City's overall population in 2000 suggests that it did not.

- 13 -

_Vivenzio I_, 545 F.Supp.2d at 251-52 (emphases in original). The court concluded that the contention that the goals of the Consent Decree had been met was without merit. Accordingly, the court dismissed all of the remaining plaintiffs' race discrimination claims.

With respect to the claims of Finocchio under the ADEA, the district court granted the County defendants' motion to dismiss, noting that Finocchio had not sought employment with the County and reasoning that the County lacked the control over the City's employment decisions sufficient to treat it as Finocchio's prospective employer. See _id._ at 253-54. The court also granted the City defendants' motion to dismiss Finocchio's ADEA claims against Driscoll and Cowin, noting that individuals cannot be held personally liable under the ADEA. See _id._ at 253. However, the court denied the motion to dismiss Finocchio's ADEA claims against the City itself. See _id._ at 252-53.

D.  The Parties to the Present Appeal

In a subsequent order, the district court concluded that there was "no just reason" to delay an appeal by Vivenzio and Wilkinson of the dismissal of their claims. Order dated August 7, 2008, at 1. Noting that Finocchio's ADEA claim was unrelated to the race discrimination claims, that Vivenzio and Wilkinson had already attempted to appeal, whereas Finocchio had not, and that Finocchio was proceeding pro se, the court ordered the entry of a final judgment pursuant to Fed. R. Civ. P. 54(b) solely as to the

- 14 -

claims of Vivenzio and Wilkinson. Accordingly, Vivenzio and Wilkinson are the only appellants.

Since filing their notice of appeal, Vivenzio and Wilkinson have abandoned their claims against all defendants except the City. (See Vivenzio-Wilkinson brief on appeal at 5 ("Although the Notice of Appeal was to each and every part of the Judgment, Plaintiffs now consent to the dismissal of the claims against Matthew J. Driscoll, Mayor of the City of Syracuse, John T. Cowin, Chief of the City of Syracuse Fire Department, Onondaga County Personnel Department and Elaine L. Walter, Commissioner of the Onondaga County Personnel Department.").) Accordingly, the City is the only remaining appellee.

## II. DISCUSSION

On this appeal, Vivenzio and Wilkinson contend that the district court should have granted summary judgment in their favor on the ground that the goals of the Consent Decree--the original validity of which they do not challenge--had been met prior to the 2004 SFD hirings, as indicated in the 2002 Cowin Letter, and that the Decree should be dissolved. They contend that "[t]he Consent Decree is now invalid because it is not narrowly tailored to serve a compelling governmental interest." (Appellants' brief on appeal at 20.) The City contends that the district court properly granted summary judgment dismissing the race discrimination claims on the merits because the goals of the Consent Decree have not

been met. The City also pursues its contention that because these plaintiffs would not have been hired because of their test scores, they lacked standing to attack the Consent Decree; and it contends that this appeal should be dismissed because the district court's entry of a Rule 54(b) certification was an abuse of discretion.

We reject all of the City's contentions. Although the Rule 54(b) certification question is close, a majority of the panel concludes that the entry of a final judgment only as to the dismissal of the claims of Vivenzio and Wilkinson--and not as to the virtually identical race discrimination claims of Finocchio-- was not an abuse of discretion. See generally Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10 (1980); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438 (1956); Transport Workers Union of America, Local 100 v. New York City Transit Authority, 505 F.3d 226, 230-31 (2d Cir. 2007). As to the City's challenge to standing, we agree that Vivenzio and Wilkinson have standing for the reasons stated in the district court's opinion in Vivenzio I. See Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656, 666 (1993) (when a plaintiff challenges a race-based affirmative action program, the injury-in-fact "is the inability to compete on an equal footing"); Jana-Rock Construction, Inc. v. New York State Department of Economic Development, 438 F.3d 195, 204 (2d Cir. 2006). As to the merits of the race discrimination claims, we conclude that neither Vivenzio and Wilkinson nor the

City were entitled to summary judgment for the reasons that follow.

A. The Propriety of Summary Judgment

The standards for dealing with a summary judgment motion are well established. The district court is not permitted to resolve issues of fact, but must determine (a) whether there is a "genuine issue as to any material fact," and (b) whether, in light of the undisputed facts, "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "It is not the province of the court itself to decide what inferences should be drawn . . . ; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper . . . ." Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000).

The substantive standards applicable to claims of employment discrimination under Title VII, which are also

- 17 -

generally applicable to claims of employment discrimination brought under § 1981, the Equal Protection Clause, and the NYSHRL, see, e.g., Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Brennan v. Metropolitan Opera Association, Inc., 192 F.3d 310, 316 n.2 (2d Cir. 1999), are also well established. Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff complaining of a discriminatory failure to hire must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination, see, e.g., id. at 802. Once the plaintiff has made such a prima facie showing, the burden shifts to the employer to come forward with a nondiscriminatory reason for the decision not to hire the plaintiff. See id. If the employer articulates such a reason, the plaintiff "is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Howley v. Town of Stratford, 217 F.3d at 150. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the present case, the district court ruled that Vivenzio and Wilkinson had adduced a prima facie case, and the City does not contest that ruling on appeal. The question on this appeal is whether the City's reliance on the Consent Decree in 2004 and 2005 constituted a legitimate nondiscriminatory reason for rejecting the applications of Vivenzio and Wilkinson. Although the district court answered this question in the affirmative, we conclude that, on the present record, it could not be answered as a matter of law.

The long-term goal expressed in the Consent Decree was that SFD employ African Americans "in numbers approximating their representation <u>within the labor force</u> which is available for employment in the City of Syracuse and their interest in, and ability to qualify for, such positions." (Consent Decree art. V, ¶ 6 (emphasis added).) In entering into the Decree, the parties understood that the most recent census data indicated "that blacks comprise[d] 10% of the civilian labor force in Syracuse," <u>Alexander v. Bahou</u>, 86 F.R.D. at 199; and, apparently leaving aside the stated considerations of interest and qualification, the parties thus agreed that the "the long-term goal for blacks in each rank" of SFD was "approximately 10%" (Consent Decree art. V, ¶ 6).

The district court ruled that the City's reliance on the Consent Decree constituted a legitimate nondiscriminatory basis for not hiring Vivenzio and Wilkinson because it found that

> [w]hile plaintiffs have shown that African Americans made up 16.58% of the City's fire

> department just prior to the 2004 hirings, <u>they have not shown that that figure approximated the percentage of African Americans in the City's labor pool</u>. Indeed, <u>evidence that African Americans made up 25.3% of the City's overall population in 2000 suggests that it did not.</u>

<u>Vivenzio I</u>, 545 F.Supp.2d at 252 (emphases added). Each of the emphasized portions of this ruling is flawed. First, although, as discussed above, Vivenzio and Wilkinson bore the ultimate burden of proof, the City had both the burden of production with respect to its contention that its employment decision was based on a legitimate nondiscriminatory reason, and, as the party moving for summary judgment, the burden of showing that there was no genuine issue of material fact to be tried. Given the long-term goal stated in the Consent Decree of having African American employees in SFD "approximat[e African Americans'] representation within the [City's] labor force," the racial makeup of the City's labor pool is a material ingredient in the issue of whether the City's hiring practices could be justified by its reliance on the Consent Decree. Yet the City did not adduce any evidence as to the percentage of African Americans in its labor pool. Indeed, the City's Mayor and the Chief of SFD, in their deposition testimony described in Part I.B. above, seemed unaware that the labor pool was the Consent Decree's stated frame of reference. The City having made no showing as to the racial makeup of its labor force at the time of the hiring decisions challenged here, its claim of reliance on the Consent Decree was entirely inadequate to show a legitimate nondiscriminatory reason for the challenged hiring decisions.

- 20 -

The second flaw in the district court's decision was its reliance on the percentage of African Americans in the City's overall population, 25.3%, as an indication that having African Americans as 16.58% of SFD's workforce meant that the long-term goals of the Consent Decree had not been met. There is no evidence in the record that all African Americans in the City's overall population are members of the labor force, and such a suggestion seems unrealistic. Thus, the district court's rationale for its ruling that Vivenzio and Wilkinson had failed to show that the Decree's long-term goals had not been met was erroneous.

In fact, the 2002 Cowin Letter presented by Vivenzio and Wilkinson, in which the Chief of SFD advised the Mayor explicitly, "We have met and exceeded the goals of the consent decree in every way," constitutes evidence from which a rational factfinder could infer that the City was not entitled to rely on the Consent Decree in declining to hire Vivenzio and Wilkinson in 2004 and 2005. Thus, the City, as the party moving for summary judgment, failed to carry its burden of showing that there was no genuine dispute as to a material fact--the racial makeup of its labor force. Accordingly, the district court could not properly grant summary judgment dismissing Vivenzio's and Wilkinson's race discrimination claims.

This does not, however, mean that Vivenzio and Wilkinson were entitled to summary judgment in their favor. Although they contend that the goals of the Consent Decree have been met, they,

like the City, presented no evidence as to the racial makeup of the City's labor force in 2004 and 2005. Although Vivenzio and Wilkinson rely heavily on the 2002 Cowin Letter which stated that the goals of the Consent Decree had been met, that conclusory statement could not be the basis for judgment in their favor as a matter of law. A factfinder could easily conclude that that Letter was not credible given that its author testified that, until this lawsuit was brought in 2005, he had believed that the Consent Decree's frame of reference was "the [African American] population of the city, not the work force" (Cowin Dep. 40).

In sum, we conclude that the absence of evidence in the record as to the percentage of African Americans in the City's labor pool left genuine issues of material fact that precluded the entry of summary judgment in favor of either party. Accordingly, the matter must be remanded to the district court for further proceedings.

B. Proceedings on Remand

On remand, we assume that the record will be augmented to permit resolution of the issues of, inter alia, the racial makeup of the City's labor force in 2004 and 2005, and whether the goals of the Consent Decree have been met. We express no view as to the viability of the 1980 Consent Decree or as to whether, after further development of the record, new motions for summary judgment may be appropriate.

In addition, we note that although the race discrimination claims of Finocchio, like those of Vivenzio and Wilkinson, were summarily dismissed by the district court, the court declined to include Finocchio's claims in its Rule 54(b) certification for the entry of a partial final judgment. Thus, the order dismissing Finocchio's race discrimination claims remains interlocutory, and such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b).

We also note that because Vivenzio and Wilkinson on appeal expressly renounced their claims against all defendants except the City (see Part I.D. above), only their claims against the City are hereby reinstated. Finocchio, who is not a party to this appeal, has made no such renunciation. We express no view as to whether the district court, if it reinstates Finocchio's race discrimination claims against the City, should reinstate his race discrimination claims against other defendants as well. We leave it to that court in the first instance to sort out the complexities generated by its Rule 54(b) certification of the dismissals of the race discrimination claims of Vivenzio and Wilkinson but not the virtually identical race discrimination claims of Finocchio.

CONCLUSION

We have considered all of the parties' contentions in support of their respective positions on this appeal and, except to the extent indicated above, have found them to be without merit. The judgment of the district court is vacated insofar as it dismissed the race discrimination claims of Vivenzio and Wilkinson against the City, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.

Costs to plaintiffs-appellants.

DEBRA ANN LIVINGSTON, *Circuit Judge*, joined by ERIC N. VITALIANO, *District Judge*, concurring:

I concur fully in the majority's disposition and analysis. I write separately to note my disagreement with the district court's conclusion that the plaintiffs "do not challenge the constitutionality of the consent decree." *See Vivenzio v. City of Syracuse (Vivenzio I)*, 545 F. Supp. 2d 241, 250 n.2 (N.D.N.Y. 2008). I believe that the plaintiffs do make such a challenge, though I reach no conclusion as to whether plaintiffs adequately presented it before the district court. I also conclude that the merits of such a challenge, if sufficiently argued, need not be addressed on this appeal. *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150-51 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions."). Should it become necessary on remand, however, I believe that the district court should address the plaintiffs' constitutional claims and determine whether they were sufficiently argued as to be preserved, and whether any failure to preserve them should nevertheless be excused.

The plaintiffs conceded before the district court that "[a]t the time the Consent Decree was entered, it complied with the constitutional requirement that it be narrowly tailored to meet a compelling governmental interest." *Vivenzio I*, 545 F. Supp. 2d at 250 n.2 (quoting Plaintiffs' Mem. in Supp. of Summ. J. at 14). At the same time, however, they contended that the Decree *no longer* passes constitutional muster because it is not *now* narrowly tailored to serve a compelling governmental interest. Plaintiffs' Mem. in Supp. of Summ. J. at 14. The district court concluded that "[s]ince the terms of the consent decree have not changed since its inception and race-conscious affirmative action plans still must be narrowly tailored to meet a compelling governmental interest, it would be illogical to suggest that the consent decree was constitutional then but not today."

*Vivenzio I*, 545 F. Supp. 2d at 250 n.2. But this is simply not the case.

Both the Supreme Court and the Courts of Appeals have pronounced repeatedly on the subject of strict scrutiny in the context of voluntary affirmative action plans in the 30 years since the Consent Decree here was entered. *See, e.g.*, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989); *Edwards v. City of Houston*, 37 F.3d 1097 (5th Cir. 1994). Indeed, it was not until 1989, in *Croson*, "that the Supreme Court expressly held that strict scrutiny should be used in evaluating state and local affirmative action programs." Erwin Chemerinsky, Constitutional Law § 9.3 at 734 (3d ed. 2006). It is possible that a decree that appeared to meet the relevant constitutional standards as understood in 1980 may fail to satisfy current precedent – precedent that has developed since entry of such a decree but that could well apply retroactively. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). It is thus not illogical to suggest that a decree that appeared to be constitutional in light of the law in effect when it was entered is unconstitutional today. And it is certainly not illogical to argue that circumstances arising since entry of the decree have rendered its current implementation unconstitutional. *See, e.g.*, *Dean v. City of Shreveport*, 438 F.3d 448, 455-58 (5th Cir. 2006) (noting need to determine, with regard to a 1980 consent decree, whether city continued to have a compelling interest sufficient to justify a race-conscious remedy).

Before this Court – and without any waiver objection by the appellees – the plaintiffs identified as a question for decision "[w]hether the lower court improperly granted Summary Judgment to the City of Syracuse where the 1980 Consent Decree fails to survive strict scrutiny." Vivenzio-Wilkinson Brief on Appeal at 4. The body of their brief contains a subsection entitled: "The Consent Decree is invalid because it is not narrowly tailored and is thus unconstitutional because it fails review under strict scrutiny." *Id.* at 20. This subsection argues, among other things,

that the Consent Decree has been implemented erratically over its 30-year history. It asserts that the Decree has been read to establish a goal of proportionate African American representation in each firefighter rank but that the only tool the Decree makes available to achieve this goal – a race-conscious initial recruitment hiring plan that impacts the higher ranks only indirectly through trickle-up advancement – is not narrowly tailored and "could . . . serve to allow the Decree to continue in perpetuity." *Id.* at 23. Finally, the plaintiffs contend that the City of Syracuse has failed continuously to monitor the Decree's implementation: "The fact that the City has attempted to implement the Decree in such an arbitrary manner supports Plaintiffs' position that the Decree lacks narrowly tailored provisions to avoid the least possible harm to those who have qualified to be firefighters." *Id.* at 24.

I conclude that the plaintiffs do make a constitutional challenge to the Consent Decree, contrary to the determination of the district court. Given the circumstances of this case, I believe the district court should, if necessary, determine whether plaintiffs' constitutional challenge was sufficiently developed before it so as to be preserved and, if not, whether to excuse any waiver and to seek development of the record and additional briefing as to this challenge. *Cf. Baker v. David Alan Dorfman, P.L.L.C.*, 232 F.3d 121, 123 (2d Cir. 2000) (remanding to the district court for consideration in the first instance of an issue of "sufficient public importance" even though neither party had argued the issue before the district court or on appeal).