Hon. Vanessa L. Bryant, United States District Judge
I. Introduction
Plaintiff Kristen Pierson brings this action for copyright infringement alleging that Defendant Infinity Music & Entertainment, Inc. ("Infinity") reproduced without authorization photographs copyrighted by Plaintiff, and that derivative works were made from these reproductions, copies were distributed of them, and *391 they were displayed on Infinity's website. In Count Three of the Complaint, Plaintiff also alleges violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202. Defendant moves for partial summary judgment on Count Three. For the reasons that follow, Defendant's motion is DENIED.
II. Background
Defendant and its related companies own and operate two live music venues in Connecticut, located in Hartford and Norfolk, respectively. [Dkt. No. 32 ¶ 2]. Defendant owns and operates the website with the URL www.infinityhall.com, which it uses to promote and sell tickets to concerts. Id. ¶ 3. Defendant hired a third-party vendor, Web Solutions, Inc. ("Web Solutions"), to design the website. [Dkt. No. 32 ¶ 4; Dkt. No. 36-6]. At the bottom of every webpage on the website is a copyright symbol (©), the year of publication, and Defendant's name. [Dkt. No. 32 ¶ 5]. When a musical act is booked for a concert at one of Defendant's venues, an event page on www.infinityhall.com is created which includes, among other things, information about the concert and background information on the band. Id. ¶ 6.
Defendant also publishes a "Terms of Use" webpage on its website at the URL http://www.infinityhall.com/Terms-of-Use. [Dkt. No. 36-2]. A link to the website's terms of use is in the footer of each webpage. [See e.g. , Dkt. No. 1, Exh. 4, 12, 13]. The Terms of Use webpage states, in relevant part:
This website contains material which is owned by or licensed to us. This material includes, but is not limited to, the design, layout, look, appearance and graphics. Reproduction is prohibited other than in accordance with the copyright notice, which forms part of these terms and conditions.
[Dkt. No. 36-2]. The copyright notice, also published on the Terms of Use webpage, reads:
All materials contained on this site are protected by United States copyright law and may not be reproduced, distributed, transmitted, displayed, published or broadcast without prior permission of Infinity Music Hall & Bistro. You may not alter or remove any trademark, copyright or other notice from materials contained within this site.
You may download content, pages and downloadable materials from this website for your personal, non-commercial use only.
Id.
Plaintiff Kristen Pierson is a Rhode Island resident who owns and operates a photography business. [Dkt. No. 1 ¶ 4; Dkt. No. 33-2 at 23-25]. On October 2, 2009, Plaintiff took live photographs of a band known as The Soft Parade in exchange for a payment $135. [Dkt. No. 33-2 at 101-02]. Plaintiff registered the images with the United States Copyright Office as Copyright Registration No. VA 0001887068, dated January 15, 2015. [Dkt. No. 1 ¶ 32; Dkt. No. 26].
During 2014, Defendant booked the band The Soft Parade to perform a concert at its Norfolk venue on April 18, 2015. [Dkt. No. 32 ¶ 7]. In connection with The Soft Parade's performance, Defendant created an event page on its website at the URL http://www.infinityhall.com/Events/soft-parade-the-world39s-1-doors-tribute-band-4-18-2015 (the "Soft Parade Page"). [Dkt. No. 32 ¶ 9; Dkt. No. 1, Exh. 12]. The Soft Parade Page was first published on November 6, 2014 and included, among other things, one of Plaintiff's photographs of the band, an embedded YouTube video of the band, an approximately 2-page long (when printed) "Artist Bio" providing information *392 about the band, as well as links to buy tickets and to other shows in the same musical genre. [Dkt. No. 32 ¶ 9; Dkt. No. 1, Exh. 12].
In the footer portion at the bottom of the Soft Parade Page, Defendant's standard copyright notice appeared, which, as of the original date of publication on November 6, 2014, appeared as follows: "© 2014 Infinity Music & Entertainment Inc. All rights reserved." [Dkt. No. 32 ¶ 10; Dkt. No. 1, Exh. 12]. Screenshots of the relevant pages of the Infinity Hall website were included as exhibits to the Complaint, and the parties do not dispute that these depictions are accurate. [See Dkt. No. 1, 12]. The Soft Parade webpage is five pages long when printed, and Plaintiff's photograph appears at the top of the first page. Id. While the provided screenshot does not appear to include the footer containing the copyright notice and link to the Terms of Use, this notice is included in a copy of the Soft Parade Page's source code. [See Dkt. No. 1, Exhs. 13]. The Soft Parade source code is seven pages long, and the copyright notice and link to the Terms of Use are among the last few lines of code. Id.
On August 29, 2016, Defendant received an email from Plaintiff stating that she owned the copyright in the photograph of the band The Soft Parade (the "Soft Parade Image") appearing on the Soft Parade Page in connection with the April 18, 2015 concert and demanding removal of the image. [Dkt. No. 32 ¶ 11; Dkt. No. 1, Exh. 14]. Web Solutions removed the Soft Parade Image from the Soft Parade Page on September 1, 2016. [Dkt. No. 32 ¶ 13]. Plaintiff does not claim that Infinity Music removed or altered any copyright management information from the Soft Parade Image. [Dkt. No. 33-2 at 254; Dkt. No. 1 ¶¶ 77-82].
In 2011, a band known as Lotus Land hired Plaintiff to photograph it. [Dkt. No. 33-2 at 120-122]. In exchange for payment of $475, Plaintiff agreed to provide a three hour promotional photo shoot with the band and provide five "jpeg" files with images from the photo shoot for the band's promotional and website use. [Dkt. No. 33-2 at 120-122]. Plaintiff's Lotus Land photographs were first published on September 3, 2011 and Plaintiff registered the images with the United States Copyright Office as Copyright Registration No. VA0001849561, dated January 9, 2013. [Dkt. No. 1, Exh. 1]. During 2015, Infinity Music booked the band Lotus Land to perform a concert at its Hartford venue on August 29, 2015. [Dkt. No. 32 ¶ 14]. In connection with the Lotus Land performance, Infinity Music created an event page on its website at the URL: http://www.infinityhall.com/Events/lotus-land-the-american-rush-tribute-8-29-2015 (the "Lotus Land Page"). [Dkt. No. 32 ¶ 15; Dkt. No. 1, Exh. 2].
The Lotus Land Page was first published on June 1, 2015 and included, among other things, Plaintiff's photograph of the band, an embedded YouTube video of the band, a three-paragraph "Artist Bio" providing information about the band, as well as links to buy tickets and to other shows in the same musical genre. [Dkt. No. 32 ¶ 16]. In the footer portion at the bottom of the Lotus Land Page, Defendant's standard copyright notice appeared, which as of the original date of publication on June 1, 2015, appeared as follows: "© 2015 Infinity Music & Entertainment Inc. All rights reserved." [Dkt. No. 32 ¶ 17; Dkt. No. 1, Exh. 2]. The Lotus Land webpage is three pages long when printed, and Plaintiff's photograph appears on the first page. [See Dkt. No. 1, Exhs. 3]. As with the Soft Parade Page, the provided screenshot of the Lotus Land Page does not appear to include the footer containing the copyright notice. [See Dkt. No. 1, Exhs. 4]. However, *393 it does include a link to the Terms of Use, and the copyright notice and Terms of Use are among the last few lines of code on the last of eight pages of the Lotus Land Page's source code. Id.
On March 15, 2016, Defendant received an email from Plaintiff stating that she was the copyright owner in the photograph of the band Lotus Land (the "Lotus Land Image") appearing on the Lotus Land Page in connection with the August 29, 2015 concert and demanding removal of the image. [Dkt. No. 32 ¶ 18; Dkt. No. 1, Exh. 6]. On September 28, 2016, Infinity Music removed the Lotus Land Image from the Lotus Land Page. [Dkt. No. 36-7 at 6]. Plaintiff does not claim that Defendant removed or altered any copyright management information from the Lotus Land Image. [Dkt. No. 33-2 at 245].
III. Legal Standard
Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. Vivenzio v. City of Syracuse , 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. Id. (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Matsushita Electric Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH , 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury." Hayes v. New York City Dep't of Corr. , 84 F.3d 614, 619 (2d Cir. 1996).
"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." Welch-Rubin v. Sandals Corp. , No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) ). "Summary judgment cannot be defeated by the presentation ... of but a 'scintilla of evidence' supporting [a] claim." Fincher v. Depository Trust & Clearing Corp. , 604 F.3d 712, 726 (2d Cir. 2010) (quoting Anderson , 477 U.S. at 251, 106 S.Ct. 2505 ).
IV. Discussion
Defendant moves for partial summary judgment on Count Three of Plaintiff's complaint, which alleges violations of Digital Millennium Copyright Act, 17 U.S.C. § 1202. Section 1202(a) provides:
No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement-
(1) provide copyright management information that is false, or
(2) distribute or import for distribution copyright management information that is false.
*394 17 U.S.C.A. § 1202(a). "Copyright management information" ("CMI") is defined in section 1202(c) :
[T]he term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
(1) The title and other information identifying the work, including the information set forth on a notice of copyright.
(2) The name of, and other identifying information about, the author of a work.
(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
(6) Terms and conditions for use of the work.
(7) Identifying numbers or symbols referring to such information or links to such information.
(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.
17 U.S.C. § 1202(c).
Plaintiff alleges that the copyright notices and Terms of Use transmitted on Defendant's website violated Section 1202(a) by claiming copyright in all content published on the website, including Plaintiff's photographs. Defendant does not argue that the notices did not contain the type of information enumerated in section 1202(c), but rather that this information was not "conveyed in connection with" Plaintiff's work. Defendant further argues even if the notices were conveyed in connection with Plaintiff's photographs, Defendant lacked the requisite intent to induce, enable, facilitate, or conceal infringement.
A. The Copyright Notices Were Conveyed In Connection With Plaintiff's Photographs
The term "conveyed" in section 1202(c)"is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed." Janik v. SMG Media, Inc. , No. 16CIV7308JGKAJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (quoting S. REP. 105-190 at 35 (1998) ); see also Bounce Exch., Inc. v. Zeus Enter. Ltd. , No. 15CV3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) ("In connection with," by plain reading and common sense, comprehends information conveyed *395 in or with a copyrighted work if that information otherwise satisfies § 1202(c)'s criteria.").
Defendant cites several cases in support of its assertion that a standard copyright message at the bottom of a webpage is not "conveyed in connection with" content at the top of a webpage. See GC2 Inc. v. Int'l Game Tech. PLC , 255 F.Supp.3d 812, 821-22 (N.D. Ill. 2017) (holding that link to Defendant's terms of use agreement at the bottom of every page of the website was not false CMI, because courts "have generally required more than a boilerplate terms of use notice near a copyrighted work in order to find a party liable for distributing false CMI."); Stevens v. Corelogic, Inc. , 194 F.Supp.3d 1046, 1051 (S.D. Cal. 2016) (holding that the defendant's display of its own copyright notice on the same webpage as Plaintiffs' photographs did not constitute false CMI); Personal Keepsakes, Inc. v. Personalizationmall.com, Inc. , 975 F.Supp.2d 920, 929 (N.D. Ill. 2013) (holding that a copyright notice "at the bottom of every page of the website in the generic website footer" was not "conveyed with" the copyrighted material in question, and therefore could not constitute false CMI pursuant to section 1202(a) ).
The most directly analogous of these cases is GC2 Inc. v. Int'l Game Tech. PLC , 255 F.Supp.3d 812 (N.D. Ill. 2017). In that case, the defendant linked to terms of use at the bottom of each webpage containing the copyrighted work, and these terms of use stated that the defendant " 'and/or its licensors and affiliates own all right ... copyrights ... and other intellectual property rights" on its website, including rights to the 'graphics, texts, information, pictures, video' displayed." Id. at 821. The court held that these terms of use constituted false statements under 18 U.S.C. §§ 1202(a) and (c), but that they were not "conveyed in connection with" the work. Id. As in GC2 , a link to Defendant's Terms of Use appears at the bottom of both the Soft Parade and Lotus Land webpages. [Dkt. No. 36-2]. Similarly, the terms of use in this case falsely claim that all website content is either the property of or licensed to Defendant. In addition, the terms of use indicate that the website content "may not be reproduced, distributed, transmitted, displayed, published or broadcast without prior permission of Infinity Music Hall & Bistro." Id.
However, the cases the GC2 court cites to in support of the statement that courts "have generally required more than a boilerplate terms of use notice near a copyrighted work in order to find a party liable for distributing false CMI," id. at 821-22, do not compel this conclusion. In Personal Keepsakes, Inc. v. Personalizationmall.com, Inc. , 975 F.Supp.2d 920, 929 (N.D. Ill. 2013), the plaintiff argued that a generic copyright message at the bottom of a website claimed copyright not in a photograph itself, but in a photographic depiction of a product that plaintiff believed displayed a copyrighted poem. Moreover, the Personal Keepsakes court determined that the poems at issue were not entitled to copyright protection, rendering that court's comments about the meaning of "conveyed in connection with" dicta. Id. Similarly, in Ward v. National Geographic Society , 208 F.Supp.2d 429, 450 (S.D.N.Y. 2002), the Court found no violation of the DMCA not because of the proximity of the copyright messages to the claimed work, but because Plaintiff did not offer sufficient evidence that the defendant knew it did not hold the copyright to the works at issue to defeat summary judgment.
The last case that Defendants cite, Stevens v. Corelogic, Inc. , 194 F.Supp.3d 1046, 1052 (S.D. Cal. 2016), suffers from the *396 same defect as GC2 . While the Stevens court granted summary judgment on the ground that the placement of defendant's copyright notice on the same page as plaintiff's photographs was insufficient to defeat summary judgment, it also relied on Ward to do so. The second case it cites in support, Tomelleri v. Zazzle, Inc. , No. 13-CV-02576-EFMTJJ, 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015), holds only that the "mere appearance" of an image on a website does not violate section 1202(a) - Tomelleri does not address the effect that a copyright notice or terms of service would have on a DMCA claim's viability.
This Court holds that the Terms of Use were "conveyed in connection with" the photographs. This is because a link to the Terms of Use appeared at the bottom of each relevant webpage, and because the Terms of Use clearly state that they are intended to cover all content on the website. This includes Plaintiff's photographs. Physical proximity is not the only appropriate measure of whether a copyright notice constitutes CMI. Rather, the notice must be "accessible in conjunction with, or appear with, the work being accessed." Janik , 2018 WL 345111, at *12. In this case, the notice and the Terms of Use are both easily accessible in conjunction with Plaintiff's photographs.
B. Intent to Induce, Enable, Facilitate, or Conceal Infringement
Defendant argues that even if the copyright notices were "conveyed in connection with" Plaintiff's photographs, Plaintiff has not offered evidence that Defendant had the requisite intent under section 1202(a) to survive summary judgment. "There are two prerequisites that must be met for [ section 1202(a)'s] prohibitions to be violated: (1) the person providing, distributing or importing the false [copyright management information] must know the [copyright management information] is false, and (2) the person providing, distributing, or importing the false [copyright management information] must do so with the intent to induce, enable, facilitate or conceal an infringement of any right under title 17." Ward v. Nat'l Geographic Soc. , 208 F.Supp.2d 429, 449 (S.D.N.Y. 2002) (quoting S. REP. NO. 105-190, at 34 (1998) ).
Defendant argues that it lacks the requisite intent because (1) the copyright notice was a standard noticed placed indiscriminately at the bottom of each page of its website, at the recommendation of a web design firm; and (2) Defendant did not know that Plaintiff held the photographs' copyrights. Plaintiff argues that it is immaterial that Defendants did not know that Plaintiff held the copyright, because Defendant must have known that Defendant did not itself own the photographs' copyrights. She further argues that Defendant intentionally chose the wording of the copyright messages at the bottom of each webpage and the Terms of Use. By failing to include any carve-outs on the website for content owned by thirdparties, Plaintiff argues that a reasonable jury could find that Defendant specifically intended to induce, enable, facilitate, or conceal infringement.
This Court agrees with Plaintiff. The Second Circuit has repeatedly recognized that "intent is always a subjective matter of inference and thus rarely amenable to summary judgment." ITC Ltd. v. Punchgini, Inc. , 482 F.3d 135, 150 (2d Cir. 2007) (quoting Saratoga Vichy Spring Co. v. Lehman , 625 F.2d 1037, 1044 (2d Cir. 1980) ). Plaintiff has offered evidence that the Defendant intentionally placed the copyright notice at the bottom of each webpage on its website and that Defendant knew it did not hold the photographs' copyrights. A reasonable jury could infer from this evidence that Defendant chose to *397 place the copyright notices at the bottom of the pages which featured Plaintiff's photographs with the intent to induce, enable, facilitate or conceal an infringement of those photographs.
V. Conclusion
For the foregoing reasons, the Court DENIES Defendant's Motion for Partial Summary Judgment.
IT IS SO ORDERED.