13-119-cv
Porter v. Quarantillo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: April 5, 2013                                          Decided: July 8, 2013)

Docket No. 13-119-cv

_____

RANDOLPH PORTER,

*Plaintiff-Appellant*,

v.

ANDREA QUARANTILLO, District Director, New York
District of the U.S. Citizenship and Immigration
Services, UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

*Defendants-Appellees*,

Before: B.D. PARKER, CARNEY, *Circuit Judges*, and RAKOFF,* *District Judge*.
_____

Appeal from a grant of summary judgment by the United States District Court for the Eastern District of New York (Irizarry, *J.*) in favor of Defendants-Appellees the United States Citizenship and Immigration Services and the agency's New York District Director Andrea Quarantillo. In "[p]roceedings for declaration of United States nationality" brought pursuant to 8 U.S.C. § 1503(a), Plaintiff-Appellant Randolph Porter sought a declaratory judgment under 28 U.S.C. § 2201(a) that he has been a United States citizen since birth due to his mother's United States citizenship and fulfillment of certain other requirements. To show that she met one of those requirements, presence in the United States for a full year before Porter's birth, Porter sought to admit into evidence statements from his mother and several others asserting that she was born in the United States and left after her first birthday. The district court deemed the statements to be inadmissible hearsay that did not come within the family history exceptions or any other exception to the hearsay rule. We hold that this determination was not an abuse of the district court's discretion.

AFFIRMED.
_____

---

* The Honorable Jed S. Rakoff, United States District Judge of the United States District Court for the Southern District of New York, sitting by designation.

ZOE SALZMAN, Emery Celli Brinckerhoff & Abady LLP, New York, NY, *for Plaintiff-Appellant Randolph Porter.*

MARGARET M. KOLBE (Varuni Nelson, Scott Dunn, *on the brief*), Assistant United States Attorneys, of Counsel, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, New York, NY, *for Defendants-Appellees Andrea Quarantillo and United States Citizenship and Immigration Services.*

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Randolph Porter, a naturalized United States citizen, sought a declaratory judgment from the district court (E.D.N.Y., Irizarry, *J.*) that he was entitled to derivative United States citizenship as of his birth. Porter's brother was killed on Pan Am Flight 103 by Libyan terrorists in December 1988, and if Porter were able to prove derivative citizenship, he ostensibly would be entitled to compensation from a settlement fund established by the governments of Libya and the United States. His argument below for derivative citizenship rested in large part on the assertion that his mother, Mary Diamond, herself a United States citizen, had remained in this country for over a year following her birth before she moved to St. Vincent and the Grenadines. Lacking other evidence, Porter attempted to show his mother's age at the time of her move by reference to a number of affidavits from his mother, other family members, and a family friend. The district court, determining that these statements were inadmissible hearsay, granted summary judgment in favor of Defendants-Appellees United States Citizenship and Immigration Services ("USCIS") and the agency's New York District Director Andrea Quarantillo. Porter appeals from that decision, and we are called on to decide whether the district court abused its discretion by not admitting the statements under the family

2

history exceptions to the hearsay rule. *See* Fed. R. Evid. 803(19), 804(b)(4). We conclude that the district court did not abuse its discretion.

# BACKGROUND

Porter's brother died on Pan Am Flight 103, which was destroyed over Lockerbie, Scotland by Libyan terrorists on December 21, 1988. Under a settlement reached between the United States and Libya, Porter may have been entitled to compensation for his brother's death if he could show that he, Porter, was a U.S. citizen at the time of the Lockerbie bombing. *See* Libyan Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008); Decision No. LIB-I-001, at 5-6 (Foreign Claims Settlement Commission 2009) (limiting compensation to claimants who were United States nationals "at the time of loss" (internal quotation marks omitted)), *available at* http://www.justice.gov/fcsc/readingroom/lib-i-001.pdf.

Porter was born in St. Vincent in 1955 and became a naturalized U.S. citizen in 1995. He argued to the USCIS in 2011, however, that he was entitled to derivative U.S. citizenship as of the time of his birth because his mother Mary Diamond was a U.S. citizen (as a consequence of having been born in this country) and had been present here for at least one continuous year before relocating to St. Vincent. *See* 8 U.S.C. § 1409© (1952) (establishing requirements for derivative citizenship).[2] Whether Porter, with derivative citizenship, would be eligible to claim from the settlement fund is not at issue in this litigation. The USCIS denied Porter a certificate of citizenship, and Porter sued in district court seeking a declaratory judgment pursuant to 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201(a) that he was a citizen at birth.

---

[2] "[T]he applicable law for transmitting citizenship to a child born abroad when one parent is a United States citizen is the statute that was in effect at the time of the child's birth." *Drozd v. INS*, 155 F.3d 81, 86 (2d Cir. 1998) (internal quotation marks and alteration omitted). Porter was born in 1955.

3

Porter relied on several affidavits to support his claim. One of these affidavits, submitted by his mother, Mary Diamond, stated that she was born in Brooklyn in 1929 and moved to St. Vincent in 1930 when she was "between one year old and two years old." App. 136. Diamond's childhood friend in St. Vincent, Thomas Brown, also submitted an affidavit stating that when they were children, Mary Diamond told him that she moved from New York to St. Vincent "when she was about one and a half years old." App. 142. According to Brown, it was "common knowledge" among people who knew Diamond during her childhood that she left the United States "when she was about one and a half years old." *Id.* Finally, affidavits from Diamond's third cousin, Porter's siblings, and from Porter himself all stated, in substance, that it was Diamond's "reputation" among her family members that she arrived in St. Vincent from the United States when she was approximately one and a half years old.

The parties cross-moved for summary judgment. The district court ruled that the affidavits submitted by Porter were inadmissible hearsay assertions, not subject to the personal or family history exceptions in Rules 803(19) and 804(b)(4). The court reasoned that Diamond's statement concerning her *age* at relocation (as opposed to the fact of relocation) and her reputation for being a certain age at relocation were not inherently reliable enough to fall within those exceptions. The court then held that Porter had failed to prove that his mother had been present in the United States for at least one year before his birth, as required by § 1409©, and that, consequently, he was not entitled to derivative citizenship. The court granted the government's motion, and this appeal followed.

**DISCUSSION**

When a party challenges a district court's evidentiary rulings underlying a grant of summary judgment, we undertake a two-step inquiry. First, "we review the trial court's evidentiary rulings, which define the summary judgment record." *LaSalle Bank Nat'l Ass'n v.*

4

*Nomura Asset Capital Corp.*, 424 F.3d 195, 211 (2d Cir. 2005). Because the "principles governing admissibility of evidence do not change on a motion for summary judgment," *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997), we review the district court's decision to exclude evidence as hearsay for abuse of discretion, *see United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot (In re Sims)*, 534 F.3d 117, 132 (2d Cir. 2008). At the second stage of our inquiry, "with the record defined, we review the trial court's summary judgment decision *de novo*," construing all evidence in the light most favorable to the nonmoving party. *LaSalle Bank*, 424 F.3d at 205, 211.

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). Rule 802 provides that hearsay is inadmissible unless made admissible by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.

Porter contends that his mother's declaration satisfies the hearsay exception permitting admission of certain statements "of personal or family history" when the declarant is unavailable.[4] *See* Fed. R. Evid. 804(b)(4). This provision exempts from the rule against hearsay statements about "(A) the declarant's own birth, adoption, legitimacy, ancestry, marriage,

---

[4] The parties agree that, because Mary Diamond passed away after this litigation began, she is "unavailable" for purposes of Rule 804. *See* Fed. R. Evid. 804(a)(4).

divorce, relationship by blood, adoption, or marriage, *or similar facts of personal or family history*, even though the declarant had no way of acquiring personal knowledge about that fact . . . ." *Id.* (emphasis added).

Diamond's sworn statement—"[w]hen I was between one year old and two years old, I moved to St. Vincent and the Grenadines"—does not relate to her "birth, adoption, legitimacy, ancestry, marriage, divorce, [or] relationship by blood, adoption, or marriage." Instead, Porter argues that his mother's age at the time of her relocation from the United States is a "similar fact[] of personal or family history," within the meaning of Rule 804(b)(4)(A). We disagree.

The exception for statements of family history, like the other exceptions to the hearsay rule, is premised on the view that certain categories of statements are "'free enough from the risk of inaccuracy and untrustworthiness'" such that "the test of cross-examination would be of marginal utility." *Idaho v. Wright*, 497 U.S. 805, 819-20 (1990) (quoting 5 Wigmore on Evidence § 1420, p. 251 (J. Chadbourn rev. 1974)). Rule 804(b)(4) assumes that statements of family history "are likely to be informed by knowledge shared in common among family members on the basis of customs and understandings that are likely to be true." 5 Mueller & Kirkpatrick, Federal Evidence § 8:133, p. 224 (3d ed. 2007).

Neither the Rules nor the Advisory Committee Notes define the scope of "similar facts of personal or family history," but the Supreme Court has instructed that "absent express provisions to the contrary," we may presume that the drafters of the Rules intended to "adhere to the common law in the application of evidentiary principles." *Tome v. United States*, 513 U.S. 150, 160-61 (1995). At common law, the scope of the exception for "declarations of family history" was defined by the following question: "Were the circumstances named in the statement such a marked item in the ordinary family history and so interesting to the family in common that

6

statements about them in the family would be likely to be based on fairly accurate knowledge and to be sincerely uttered?" 5 Wigmore on Evidence § 1502, p. 400 (J. Chadbourn rev. 1974).

The Diamond affidavit does not meet this test. The affidavit fails satisfactorily to explain how the precise date of relocation was sufficiently significant or interesting or unusual such that it ever became—much less remained for more than eighty years—a subject of presumptively accurate family lore. The affidavit was offered not simply to prove that Diamond left the United States at an early age. The affidavit was offered to prove many years after the event a very narrow range of dates for her travel—a range about which she, because of her age, lacked personal knowledge. We do not believe that family members would ordinarily be so interested in Mary's exact age at relocation as to afford Diamond's imprecisely described but definitely bounded statement the level of inherent reliability required by Rule 804. In other words, although a change in one's country of residence or in one's citizenship might, like the date of one's birth, death, or marriage, be a matter of interest within a family, the district court was properly skeptical that generalized discussions of family history would include statements of age so precise as to foreclose the possibility that Mary was eleven months old but allow the possibility that she was thirteen months old at the time of her relocation, especially when, insofar as the record reflects, nothing appears to have turned on that precise date for the intervening several decades prior to Porter's pursuit of derivative citizenship status. Accordingly, we find no abuse of discretion in the district court's decision to exclude Diamond's affidavit.

Porter asserts that the other affidavits satisfy the parallel exception for statements about "reputation concerning personal or family history," a hearsay exception for which the declarant's availability is immaterial. Fed. R. Evid. 803(19). This provision exempts from the hearsay rule statements concerning a "reputation among a person's family by blood, adoption, or marriage—or among a person's associates or in the community—concerning the person's birth,

adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, *or similar facts of personal or family history*." *Id.* (emphasis added).  Statements are sufficiently trustworthy, and thus satisfy this exception, "when the topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been discussed in the community."  Fed. R. Evid. 803(19)-(21) advisory committee's note.

For the same reasons as those discussed above, we conclude that the district court did not abuse its discretion by ruling that statements of Diamond's family members and friend, concerning Diamond's precise age at relocation, were inadmissible hearsay.  We see no reason for concluding that, without more, a statement about a child's age—precise to a range of months as to a time of relocation more than eighty years ago—is as inherently reliable as the types of statements that Rule 803 permits.  *See* 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.21[1], p. 803-140 (J. McLaughlin ed., 2013) ("[A] false reputation as to birth, death, or marriage is not likely to arise at any time.  However, there is a greater possibility of inaccuracy concerning other aspects of family history, such as an ancestor's travels.").  Because Porter submitted no sufficient admissible evidence establishing his mother's age at relocation, we conclude that the district court correctly determined that Porter was not entitled to derivative citizenship.

**CONCLUSION**

The judgment of the district court is **AFFIRMED**.