17-2045-cv
Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free Sch. Dist. et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand eighteen.

PRESENT:   DENNIS JACOBS,
                      CHRISTOPHER F. DRONEY,
                            *Circuit Judges,*
                      MICHAEL P. SHEA,
                            *District Judge.\**

_____

GREGORY TYRONE BERRIE,

                            *Plaintiff-Appellant*,

                      v.                                                No. 17-2045-cv

BOARD OF EDUCATION OF THE PORT CHESTER-RYE UNION FREE SCHOOL DISTRICT, ASSISTANT SUPERINTENDENT FRANK FANELLI and PRINCIPAL PATRICK SWIFT in their individual and professional capacities,

                            *Defendants-Appellees.*

_____

_____

\* Judge Michael P. Shea, of the United States District Court for the District of Connecticut, sitting by designation.

1

FOR PLAINTIFF-APPELLANT:      HOWARD SCHRAGIN (Ann L. Moscow, *on the brief*), Sapir Schragin LLP, White Plains, NY.

FOR DEFENDANTS-APPELLEES:      MAURIZIO SAVOIARDO (Richard B. Epstein, *on the brief*), Miranda Sambursky Slone Sklarin Verveniotis, LLP, Mineola, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff-Appellant Gregory Tyrone Berrie appeals from the May 31, 2017, judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) dismissing this action on summary judgment. Berrie sued his employer, Defendant-Appellee the Board of Education for the Port Chester-Rye Union Free School District (the "Board" or the "District"), as well as two District employees, Defendants-Appellees Assistant Superintendent Frank Fanelli and Principal Patrick Swift (together with the District, "Defendants"), claiming that Defendants subjected him to a racially hostile work environment and retaliated against him when he complained of discrimination. Berrie brought hostile work environment and retaliation claims against the District pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"), and against all Defendants pursuant to 42 U.S.C. §§ 1981 and 1983. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for appeal, and repeat them only as necessary to explain our decision to affirm.

## I.      Background

Berrie is an African-American man who has worked for the District since 2002, and began working as a physical education teacher at Port Chester Middle School ("the middle school") during the 2010–2011 school year. Fanelli is the assistant superintendent for the District, and Swift is the principal for the middle school.

Berrie's hostile work environment claims arise from incidents from approximately 2011 through 2016, three of which formed the basis of formal complaints to the District made by Berrie.

2

The first of those three incidents concerns an email sent by another teacher. On February 2, 2013, teacher Jeannie Iantorno forwarded an email (the "Iantorno email") to the middle school faculty with a photograph of a minority teenager wearing pants below the waist and two drawings: one of a man from behind with his back elongated, as if his waist was where the individual in the photograph wore his pants, and the other of a skeleton with the same feature. The caption referred to the individual as a different species of human that is incapable of "intelligent verbal communication," "highly fertile," and dependent on "full government care." J. App'x at 2720–21. Iantorno herself wrote, "I think we have a few of these roaming the halls!!" J. App'x at 2720. Iantorno was disciplined by the District and required to apologize via email to her colleagues. Berrie complained about the email to both his union representative and to Fanelli.

The second incident concerns Berrie's allegation that Swift intentionally used a hockey stick to hit a ball at Berrie (the "hockey incident"). On April 4, 2013, Berrie was teaching a physical education class in the school's gymnasium while some students were playing floor hockey. Swift entered the gymnasium on the opposite side from where Berrie was standing, grabbed a hockey stick, and hit a ball in Berrie's direction. Berrie was not paying attention to Swift, and the ball struck Berrie in the head. Berrie points to the following evidence to show that Swift acted intentionally: (1) Swift had never before joined Berrie's class, and walked past another class's hockey game to interrupt the game in Berrie's class; (2) Swift did not announce his arrival; (3) after the ball hit Berrie in the head, Swift raised his hand, smirked, and said "I did it;" (4) during the ensuing investigation, Swift's accounts of the incident were inconsistent; and (5) two years earlier, Swift made a comment to another teacher that, when Swift had been participating in a recreational hockey practice, he had imagined that teacher's husband's face on the hockey puck. Defendants maintain that the incident was accidental, and point to, among other evidence, witness statements from two students who, unlike Berrie, saw Swift hit the ball and claimed that it appeared that the ball hit Berrie accidentally.[1]

Berrie was very upset after he was struck, and called in sick to work for a week, citing emotional distress. Berrie formally complained about the incident to Fanelli on April 18, 2013.[2] The District investigated the incident and concluded it was accidental.

---

[1] Although these statements are hearsay as presented in the record, the evidence could be presented in admissible form as live testimony from the students. Thus, we can consider them on summary judgment. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).

[2] On April 15, Berrie met with Swift, Fanelli, the superintendent, and Berrie's union representative, Donna Coffin, regarding the hockey incident. Berrie claims that Swift made a comment at that meeting about how he was trying to getting rid of Berrie. However, the only record evidence cited—Coffin's notes on

3

The third incident concerns a news article Fanelli sent to Berrie on May 4, 2013 (the "Coates article"). Following the hockey incident, Fanelli emailed Berrie a New York Times article written by African-American author Ta-Nehisi Coates, entitled "Beyond the Code of the Streets." The article discusses, among other things, Coates's decision not to fight two drunk men with whom he had an altercation on the streets of Chicago even though he had grown up learning the "Code of the Streets." At his deposition, Fanelli testified that he sent Berrie the article because he was "trying to figure out how he could be so angry" about the hockey incident. Joint App'x at 1103. Berrie replied to Fanelli's email that he was "not an angry black man." Joint App'x at 3167. Berrie filed his second formal complaint with the District on July 30, 2013, which encompassed the Iantorno email, the hockey incident, and the Coates article.

The superintendent of the District investigated the hockey incident and issued a report on June 18, 2013. One of the report's recommendations was that Berrie seek anger management counseling. A subsequent report from the District retracted this recommendation.

In addition to the incidents contained in his formal complaints to the District, Berrie points to a number of other incidents that he contends were discriminatory and/or retaliatory:

- In 2011 or 2012, Swift asked Berrie, "can't you guys spell?" in response to a typo in an email Berrie sent to Swift. Joint App'x at 3184.

- On December 2, 2013, Berrie attended an anti-harassment training during which another teacher in attendance, Drew Ciccoria, made sexually inappropriate jokes and lewd gestures in Berrie's direction. When Berrie asked Ciccoria what he was doing, he responded that he was making the gestures to "the babes behind him." Joint App'x at 3558.

- On December 5, 2013, an assistant principal attended Berrie's class to perform an evaluation. He was critical of Berrie's lesson plan and sent home a guest speaker that Berrie had invited. The written evaluation was ultimately positive, although Berrie contends that was only because Berrie had filed a notice of claim against the District between December 5 and when the evaluation was issued.

---

the meeting—shows that Swift's comment was that *other* unnamed people had asked whether Swift would get rid of Berrie, and that Swift thought these people were "stupid."

4

- Berrie cites several comments that fellow teacher Melissa Piccola made to him, including complaining about the number of Hispanic students she was teaching; telling Berrie in front of a class that she had a constitutional right to use the "n-word;" and telling Berrie that he talked "too black." Joint App'x at 3579. On two occasions, other teachers allegedly made racially disparaging comments to Berrie about African-American students.

- Piccola also complained to Swift several times from 2013 to 2015 about having to work with Berrie. Once, a few days after Piccola had filed a complaint against Berrie, Swift sent Piccola a text message asking her to redo the complaint such that her name was both typed and signed, and indicating that the complaint had to be official and that the District was "fed up with him." Joint App'x at 3682. Piccola also testified in her deposition that during the 2014–2015 school year, after Piccola made a complaint about Berrie to Swift, Swift told Piccola to document her complaints against Berrie.

- In October 2014, someone urinated in Berrie's personal coffee pot at school, which he kept in a room that was generally accessible to administrators, teachers, and staff.

- In November 2014, Berrie discovered unflushed feces in a toilet in the physical education department's bathroom, a bathroom that was also accessible to many people.

- In December 2015, Berrie claims Swift harassed him about Berrie's improper transmission of lesson plans to a substitute teacher, even though Berrie had used an acceptable alternate means of transmission.[3]

Berrie also points to an email from Swift to the District Director from March 21, 2011, as evidence of Swift's discriminatory animus toward him. When Swift learned that Berrie might be transferred to his middle school, Swift indicated he was unhappy, referred to Berrie as "your tired, hungry, and oppressed," and expressed a desire for the middle school not to become a "dumping ground." Joint App'x at 3688.

Berrie filed a notice of claim against the Board on December 12, 2013. He filed this action in the United States District Court for the Southern District of New York on

---

[3] There are references in the record to incidents in which, Berrie claims, Swift blocked him from taking two professional development courses, and in which someone harassed Berrie about his handwriting, but Berrie does not discuss these incidents in his briefing and it appears they are not part of his claims.

August 12, 2014.  He also filed a charge of discrimination with the Equal Employment Opportunity Commission on July 20, 2015.

Defendants moved for summary judgment on September 6, 2016.  The district court granted the motion in its entirety on May 31, 2017, and dismissed the case. Regarding Berrie's hostile work environment claims, the district court reasoned that Defendants' conduct was not sufficiently severe or pervasive to constitute a hostile work environment.  Alternatively, with respect to the Board, the district court concluded that the Board had met its burden to establish the *Faragher/Ellerth* affirmative defense.[4] Regarding Berrie's retaliation claims, the district court concluded that Berrie had shown no adverse employment action against him that was causally related to Berrie's complaints of discrimination.  Berrie timely appealed.

## II.    Standard of Review

We review the district court's grant of summary judgment *de novo*.  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71 (2d Cir. 2016).  We "resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, and will affirm summary judgment only if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* at 71–72 (internal quotation marks, citations, and alterations omitted).  However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment.  *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.   Hostile Work Environment Claims

We evaluate employment discrimination claims pursuant to Title VII, the NYSHRL, and 42 U.S.C. § 1981 and § 1983 under essentially the same substantive standards. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

"[T]o establish a hostile work environment claim . . . a plaintiff must . . . show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted).  This

---

[4] *See generally Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

6

mistreatment must have occurred "because of [the] employee's protected characteristic, such as race or national origin," although the protected characteristic need not be "the *only* motivating factor." *Id.* at 20, 23 (internal quotation marks and alterations omitted).

"[A] hostile environment claim must be evaluated on the basis of the cumulative effect of the abusive conduct." *Dawson v. Cty. of Westchester*, 373 F.3d 265, 274 (2d Cir. 2004). Thus, we "examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera*, 743 F.3d at 20 (internal quotation marks and alterations omitted). The hostile and abusive conduct alleged must be severe or pervasive both subjectively to the plaintiff and objectively to a "reasonable person." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Although "[f]acially neutral incidents may be included" in evaluating the totality of the circumstances, there must be "some circumstantial or other basis for inferring that incidents [race-]neutral on their face were in fact discriminatory. *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002).

As an initial matter, several of Berrie's most substantial allegations are unsupported by the record evidence, or else not attributable to discriminatory animus.

First, there is insufficient evidence to create a genuine dispute of material fact that Swift intentionally struck Berrie in the head with a ball, or that he did so out of racial animus. The only witnesses stated that it appeared accidental, and the circumstances under which Berrie was struck confirm how difficult it would have been to strike him intentionally.

Second, the two acts of physical vandalism—the urine in Berrie's coffee pot and the unflushed toilet—cannot reasonably be attributed to any of the Defendants, or to any discriminatory animus. Berrie admits that many people had access to that work area and bathroom, especially since many members of the public had been present in the school the night before the toilet incident. As for the coffee pot, although fewer people had access to the office where it was located, without evidence of who the perpetrator was, there is no indication that it was someone with impermissible discriminatory or retaliatory animus toward Berrie.

Third, the assistant principal's criticism of Berrie's lesson plan was facially neutral, and there is no other evidence that the criticism was motivated by discriminatory animus.

7

This leaves eleven incidents over a five-year period that even arguably support Berrie's hostile work environment claims: the Iantorno email; the Coates article; Swift asking "can't you guys spell" and criticizing Berrie's transmission of a lesson plan; the retracted recommendation that Berrie seek anger management; Ciccoria's lewd jokes and gestures; three racially offensive remarks from Piccola; and two other racially offensive remarks from other teachers.[5]  Even if all of these incidents could be viewed as racially motivated, eleven incidents over five years is not "severe or pervasive" enough to create an "environment [that] would reasonably be perceived, and is perceived, as hostile or abusive."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993); *see also Stembridge v. City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven racially insensitive comments over three years, including one instance of calling the plaintiff the "n-word," were not pervasive).

Accordingly, summary judgment was warranted on Berrie's hostile work environment claims.

## IV.    Retaliation Claims

We evaluate retaliation claims under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  To establish a prima facie case of unlawful retaliation, "an employee must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Rivera*, 743 F.3d at 24.

A materially adverse action is one that "produces an injury or harm" in that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Rivera*, 743 F.3d at 25 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).  Retaliatory actions need not be a "materially adverse change in the terms and conditions of employment."  *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010).  However, "trivial harms—*i.e.*, those petty slights or minor annoyances that often take place at work and that all employees experience—are not materially adverse."  *Rivera*, 743 F.3d at 25 (internal quotation marks omitted).  "Material adversity is to be determined objectively, based on the reactions of a reasonable employee."  *Tepperwein v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).

---

[5] Berrie cites the March 21, 2011, "tired, hungry, and oppressed" email, which Swift sent to the District Director *before* Berrie began working at the middle school, only as evidence of Swift's discriminatory animus, not as an incident making up part of the hostile work environment.

To establish causation, a plaintiff may rely on evidence "that the protected activity was followed closely by discriminatory treatment, or [use] other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct" and/or "evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Temporal proximity alone is generally insufficient after about three months. *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990).

Berrie argues that the following incidents constitute retaliatory conduct: Piccola's complaints about Berrie to Swift, which Berrie claims were made at Swift's behest; the hockey incident; the Coates article; the anger management recommendation; Swift's "can't you guys spell" comment; the assistant principal's criticism of Berrie's lesson plan; and the coffee pot and toilet incidents.

As an initial matter, Swift's "can't you guys spell" comment took place in 2011 or 2012, so Berrie's subsequent complaints could not have caused it. Moreover, as discussed above, there is no evidence that the hockey incident was intentional or that Defendants were involved in the coffee pot and toilet incidents. Thus, they cannot support Berrie's retaliation claims.

Piccola's complaints about Berrie also do not support his retaliation claims. Piccola's first complaint was made on March 6, 2013. At that point, Berrie had only complained about the Iantorno email, and had done so informally. There is no evidence Piccola knew about this complaint or intended her own complaint as retaliation. Piccola's later complaints about Berrie began on December 1, 2014, over a year after Berrie formally complained to the District, about a year after Berrie's notice of claim, and nearly four months after Berrie filed this lawsuit. Thus, temporal proximity does not support an inference that Piccola's complaints were retaliation for Berrie's protected activity. Moreover, Piccola's complaints only demonstrate Defendants' retaliatory animus if she made them at Swift's direction. But the evidence only reflects that, after Piccola began to complain about Berrie, Swift twice reminded her to follow official complaint procedures. This does not create a genuine dispute of material fact as to whether Swift motivated Piccola to complain about Berrie in retaliation for Berrie's complaints against the District.

Finally, the Coates article, the retracted anger management recommendation, and the assistant principal's criticism of Berrie's lesson plan do not, individually or collectively, constitute materially adverse actions. Berrie did not ultimately have to seek anger management counseling, and the assistant principal's evaluation was positive.

9

These incidents do not rise above "petty slights or minor annoyances that often take place at work." *Rivera*, 743 F.3d at 25 (internal quotation marks omitted).

Accordingly, Berrie did not establish a *prima facie* case of retaliation, and summary judgment was warranted on Berrie's retaliation claims.

## V.    Evidentiary Rulings

Finally, Berrie argues that the district court erred in deeming admitted certain facts in Defendants' Rule 56.1 statement that Berrie's counterstatement failed to properly dispute; in particular, Berrie contends that he reasonably "denied information or knowledge," as to certain witnesses' state of mind.   Appellant Br. at 51.

We review "a district court's evidentiary rulings underlying a grant of summary judgment" for abuse of discretion.   *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). "A district court abuses its discretion when it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions."   *Id.* (alteration and internal quotation marks omitted).

Local Rule 56.1(c) provides that a fact asserted in the moving party's statement "will be deemed admitted unless controverted . . . by the opposing party."   As the district court noted, Berrie had the opportunity to take discovery, and his counterstatement failed to impugn the motives and counter the testimony of witnesses whose testimony defeated his claims.   Accordingly, the district court did not abuse its discretion in deeming admitted facts that Berrie failed to properly dispute.

## VI.    Conclusion

We have considered Berrie's remaining arguments and conclude that they are without merit.[6]   Accordingly, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] We reach no conclusion about the district court's application of the *Faragher/Ellerth* defense.