17-3502-cv
*GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand nineteen.

PRESENT:

> JON O. NEWMAN,
> DENNIS JACOBS,
> ROSEMARY S. POOLER,
> > *Circuit Judges*.

_____

GEOMC CO., LTD.,

> *Plaintiff-Counter-Defendant-Appellee*,

> v.                                                              No. 17-3502-cv

CALMARE THERAPEUTICS INCORPORATED,

> *Defendant-Counter-Claimant-Appellant.*

_____

FOR APPELLANT:                                    WILLIAM FELDMAN, Haynes and
                                                  Boone, LLP, New York, NY


FOR APPELLEE:                                     KRISTEN B. WEIL, Dentons US LLP,
                                                  New York, NY (Richard M.
                                                  Zuckerman, New York, NY, *on the
                                                  brief*)

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, District Judge).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this Order.

Defendant-Appellant Calmare Therapeutics, Inc. ("Calmare"), a Delaware corporation formerly known as Competitive Technologies, Inc. ("CTI"), appeals from the Sept. 29, 2017, judgment of the District Court for the District of Connecticut (Victor A. Bolden, District Judge) in favor of Plaintiff-Appellee GEOMC Co., Ltd. ("GEOMC"), a South Korean corporation formerly known as Daeyang E&C Co., Ltd. ("Daeyang"), entered after a bench trial. We assume the parties' familiarity with the facts and procedural history of this case.

The litigation concerns a contract dispute arising from sales of medical devices for managing pain ("Devices"). Calmare was authorized by the inventors of the technology employed in the Devices to act as agent for the inventors in connection with marketing and licensing the Devices. GEOMC manufactures the Devices and supplies them to Calmare or its customers under a license from Calmare. The District Court's judgment ordered Calmare to pay GEOMC

2

$4,673,406 for Devices delivered by GEOMC to Calmare, plus 18% interest from Dec. 31, 2010, to the entry of judgment, amounting to $5,678,764.41, for a total of $10,352,170.41. The judgment also authorized GEOMC, if the judgment was not satisfied by Dec. 31, 2017, to take possession of all Devices in Calmare's possession and sell them, crediting the proceeds against the amounts due under the judgment. The judgment also dismissed Calmare's fourth counterclaim, which alleged an overpayment by Calmare of $32,000, and awarded GEOMC attorney's fees and costs. This Court stayed the judgment pending appeal.

An unusual aspect of this case involving sales is that no sales contract is included in the record, and the parties do not contend that one exists. What the record does contain are these four key documents: (1) a 2007 agreement captioned "Territory Exclusive License Agreement For Intellectual Property" (the "2007 License"), (2) a 2008 agreement captioned "Distributor Appointment in Korea" (the "Korea Agreement") (3) a 2010 agreement captioned "Memorandum of Understanding" (the "2010 MOU"), and (4) a 2012 agreement captioned "Security Agreement."

The appeal presents several issues: (1) whether payment from Calmare to GEOMC was due upon delivery of Devices to Calmare or upon sale of Devices by Calmare to its end-user customers; (2) whether evidence of sales by GEOMC in South Korea was properly excluded; (3) whether Calmare's Chief Executive Officer had authority to execute the Security Agreement; (4) whether an "event of default" under the Security Agreement occurred; (5) whether the equitable remedy portions of the District Court's judgment were proper; (6) whether 18 percent prejudgment interest was properly imposed on the total sum due from

3

Calmare to GEOMC; and (7) whether the District Court erred in striking two affirmative defenses and five counterclaims from Calmare's answer to GEOMC's second amended complaint. This last issue has been adjudicated in an opinion filed this day.

1. *Date of payment from Calmare to GEOMC.* In the 2007 License, CTI (identified as "CTT")[1] granted Daeyang an exclusive worldwide license "to make and supply" the Devices to CTI or its customers. The provision of the 2007 License most relevant to this appeal provides: "**Royalty Rate.** DAEYANG and CTT will share profits of 50% each from sales of Licensed Products produced by DAEYANG." This is the only provision of the 2007 License that concerns payments between the parties. The 2010 MOU provides:

> "The following describes the understanding of both GEOMC . . . and [CTI] regarding the revenue splits for sales of [the Devices].
>
> "1. GEOMC will receive $9,000 for the sale of each unit."

The parties orally agreed to change the $9,000 amount to $10,000.

The District Court considered the 2007 License ambiguous as to whether payment by Calmare was due on delivery of Devices to Calmare or on sale of Devices by Calmare to its end-user customers, considered extrinsic evidence on the issue, and ruled that payment was due on delivery. Whether a contract is ambiguous is a question of law, *see Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 88 (2d Cir. 2015), the decision of which we review *de novo, see Law Debenture Trust Co. of New York v. Maverick Tube*

---

[1] The 2007 License refers to CTI as CTT, but there is no dispute that CTI (Competitive Technologies, Inc., now known as Calmare) is the licensor.

4

*Corp.*, 595 F.3d 458, 468 (2d Cir. 2010). The only provision of the 2007 License shedding light on time of payment states that the parties "will share profits of 50% each from sales of [Devices] produced by [GEOMC]." Clearly, there cannot be "profits" from "sales" until there have been sales. GEOMC alleged that it sold Devices to Calmare, but even if some of the Devices delivered to Calmare were sold to Calmare, there could not be "profits" to be shared "50% each" between GEOMC and Calmare until the Devices were sold to Calmare's end-user customers. It is therefore unambiguous that payment of shared profits was not required upon delivery,[2] and extrinsic evidence that arguably altered the time of payment should not have been considered.[3] The 2010 MOU changed the 50 percent share of profits to "$9,000 for the sale of each unit," an amount later changed to $10,000. By stating that payment would be made for "sales," this document continued the arrangement that the time of payment would be after sale of a Device to a Calmare customer, not after delivery of a Device to Calmare.

Because the District Court's award of damages was based on the number of Devices that GEOMC delivered to Calmare, a remand is required for redetermination of the amount, if any, owed by Calmare based on the number of Devices it sold, after deduction of the amount, if any, owed by GEOMC to

---

[2] It is sometimes contended that a document is ambiguous whenever different judges interpret it differently. That view is incorrect, *see Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608, 619 n.8 (2d Cir. 2001), and this Court has previously disagreed with a district judge's view that a contract was ambiguous, *see Luitpold Pharmaceuticals*, 784 F.3d at 89-90.

[3] The District Court stated, "As the amount of payment was originally tied to the sale of the products in question, the written contractual language supports the notion that payments were due after the completion of sales to third parties, not upon delivery of the devices." *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2017 WL 3585337, at *7 (D. Conn. Aug. 18, 2017). The Court altered this correct reading of the contractual language only after considering extrinsic evidence.

Calmare (as discussed below). It is undisputed that Calmare has not paid GEOMC for 61 Devices sold by Calmare between 2012 and 2016.

2. *Exclusion of evidence of GEOMC's sales in Korea*. In 2008 Calmare and GEOMC executed the Korea Agreement. Calmare delegated to GEOMC the authority to designate the exclusive distributor of the Devices in Korea "under the same conditions set forth in the [2007 License]," *i.e.*, to pay Calmare 50 percent of the profits from sales, later changed to $9,000 and then to $10,000 per sale. GEOMC designated itself as distributor and sold Devices in Korea. Anticipating Calmare's argument that any money it owed GEOMC should be offset by money GEOMC failed to pay Calmare for GEOMC's sales in Korea, GEOMC moved before trial to exclude evidence of such sales. The Court granted the motion, giving two reasons: (1) the pleadings did not mention the Korea Agreement and Calmare did not make any "meaningful discovery" in connection with sales in Korea, and (2) admitting evidence of GEOMC's Korea sales claim would "contradict the 'law of the case' doctrine" because the Court had previously prohibited Calmare from expanding the case to include new parties and claims when it granted GEOMC's motion to strike defenses and counterclaims.

Although evidentiary rulings are reviewed to determine if they exceed allowable discretion, *see Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013), we conclude that such discretion has been exceeded on this point, especially in a case that must be remanded in any event to determine exactly what amount of money is owed and by whom-with respect to sales of the Devices. In Calmare's answer to GEOMC's second amended complaint, Calmare alleged that money

6

owed by GEOMC should be set off against money Calmare owed to GEOMC, and Calmare contended that its answer referred to the Korea Agreement. Furthermore, Calmare sent GEOMC a discovery request, asking GEOMC, among other things, to "[i]dentify the total number of [D]evices sold in South Korea from 2013 through 2016, including the price paid for each sale." This request was not answered. Calmare also asked GEOMC's CEO in a deposition how many Devices GEOMC sold in Korea and at what price; the CEO partially responded, stating, "[a]bout, more or less, 30," but declined to disclose how many were sold after August 22, 2014, because her attorney advised her that was "confidential information." In addition, although the District Court struck certain of Calmare's counterclaims in order to avoid prejudice to GEOMC and undue expansion of the scope of the case, it declined to strike Calmare's affirmative defense that damages owed by Calmare should be set off by amounts GEOMC owes Calmare. In view of these facts, the District Court exceeded its discretion by denying Calmare the opportunity to introduce evidence of the amounts, if any, that GEOMC owes Calmare for sales of Devices in Korea.

On remand, the District Court should allow Calmare limited discovery as to the number of Devices sold by GEOMC and the prices of such sales and then determine what amount of set-off, if any, Calmare is entitled to.

3. *Apparent authority of Calmare's CEO*. For reasons explained by the District Court, GEOMC's claim that Calmare's CEO lacked apparent authority to execute the Security Agreement was properly rejected.

4. *Default under the Security Agreement*. The District Court ruled that Calmare's failure to pay GEOMC upon delivery of Devices was an "Event of

Default" under the Security Agreement. Because we have ruled that payment was not required from Calmare until Devices were sold to Calmare's customers and because it remains to be determined, on remand, the amount Calmare owes GEOMC for Devices sold to Calmare's customers, and the amount, if any, GEOMC owes Calmare for Devices sold in Korea (and the effect, if any, of such sales on the question of whether Calmare defaulted under the Security Agreement), the ruling on "Event of Default" must be vacated, and breach of the Security Agreement redetermined. To the extent that some Devices were sold to Calmare's customers but required payments with respect to such sales were not made to GEOMC, and a net balance, after any set-off, is owed to GEOMC, an event of default may be redetermined to have occurred.

5. *The equitable portions of the judgment*. Calmare contends that the provisions of the judgment allowing GEOMC to repossess the nearly 400 Devices in Calmare's warehouses is improper because the value of these Devices far exceeds the amount that the District Court ruled Calmare owes GEOMC. Although it remains to be determined on remand whether an Event of Default under the Security Agreement has occurred, Calmare's challenge to the structure of the District Court's equitable remedy is without merit. If it is determined on remand that Calmare is in default for failing to pay GEOMC what is owed for sales to Calmare's customers, GEOMC's repossession of Devices remaining in Calmare's custody and their sale will be proper even if the value of those Devices exceeds the amount owed. This remedy is precisely what the Security Agreement provides. Furthermore, Calmare's contention of excess value flowing to GEOMC ignores the judgment's requirement that GEOMC apply the proceeds of

repossessed and sold Devices to satisfy the judgment, and return any excess proceeds and any unsold Devices to Calmare.

6. *Imposition of 18 percent interest on all money due to GEOMC*. Because the amount of money due from Calmare to GEOMC, if any, remains to be determined on remand, it is not certain that the issue of prejudgment interest will remain in the case. However, Calmare challenges two of the District Court's rulings with respect to interest, and because these rulings do not depend on the amount owed by Calmare, we will review them.

First, Calmare contends that interest on any amount owed should run only on GEOMC's costs and expenses incurred in enforcing its rights under the Security Agreement, rather on the entire amount that Calmare owes. The Security Agreement provides that in the event of a default, GEOMC will be entitled to recover "all costs and expenses" incurred by GEOMC in enforcing Calmare's obligations and in connection with repossessing and selling the Devices constituting the collateral securing the Agreement. Then, the only sentence of the Security Agreement that mentions interest states, "All of such costs and expenses (collectively, the 'Liquidation Costs'), together with interest at a per annum rate of interest which is equal to 18% per annum, shall be paid by [Calmare] to [GEOMC] on demand and shall constitute and become a part of the debt secured hereby."

GEOMC points out that the Agreement does not provide for costs and expenses "together with interest on such Liquidation Costs," nor for costs and expenses "together with interest thereon." Br. for GEOMC at 54. GEOMC also contends that because liquidation costs are usually incurred "essentially

9

contemporaneously with the sale of Devices," there is "little time for interest to accrue" on such costs. *Id*. at 55.

The Security Agreement mentions the 18 percent rate only in a sentence concerned with collection costs. Although the contract does not restrictively say that interest runs "on" such costs nor restrictively authorize costs with interest "thereon," it is equally true that it does not broadly say that interest runs "on all amounts owed." In the absence of precise language, an 18 percent rate on costs "together with" interest is fairly understood to mean "only on such costs," even if it runs for only a short time. Accordingly, if GEOMC is determined on remand to be entitled to Liquidation Costs, it will also be entitled to 18 percent prejudgment interest on such costs; it will be up to the District Court, in its discretion, whether to award prejudgment interest on other damages, if any, and at what rate, up to the statutory maximum.[4]

---

[4] The relevant Connecticut statute authorizing interest on non-loan obligations, Conn. Gen. Stat. § 37-3a, sets a maximum rate of ten percent. Although Connecticut courts apply a contracted rate above 10 percent to unpaid loans, *see Little v. United National Investors Corp.*, 160 Conn. 534, 541-42 (1971) (interpreting Conn. Gen. Stat. 37-1), it is not clear whether they do so for non-loan obligations. We need not predict Connecticut law on this matter because, as GEOMC contends on appeal, *see* Br. for GEOMC at 55, in the District Court Calmare did not dispute application of the 18 percent rate to Liquidation Costs and has therefore forfeited a challenge to the rate, a contention Calmare does not dispute in its reply brief.

The judgment awards the 18 percent prejudgment interest from December 31, 2010, but the District Court's opinion states that Calmare has made no payments since December 31, 2011. From the amount of interest awarded at 18 percent, it is apparent that the District Court awarded interest for six and three quarters years, which means that the 2010 date of the judgment is what the Court intended as a starting date. The Security Agreement, which authorizes interest, was dated May 1, 2012. On remand, if it is determined that Calmare owes GEOMC a net amount, the date on which interest begins to run can be clarified.

10

*Disposition*. Calmare's claims on appeal concerning the District Court's striking of two affirmative defenses and five counterclaims have been adjudicated in an opinion filed this day. For reasons stated in this Order, the judgment of the District Court is VACATED, and the case is REMANDED for further proceedings consistent with this Order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk