22-808-cv
Gerzhgorin v. Selfhelp Community Services, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> GERARD E. LYNCH,
> BETH ROBINSON,
> *Circuit Judges.*

---

OLEG GERZHGORIN,

> *Plaintiff-Appellant,*

v.                                                                        22-808

SELFHELP COMMUNITY SERVICES, INC., RUSSIAN HOLOCAUST SURVIVORS PROGRAM,

> *Defendants-Appellees.*

---

FOR PLAINTIFF-APPELLANT:         Oleg Gerzhgorin, *pro se*, Brooklyn, NY.

FOR DEFENDANTS-APPELLEES:         Diane Krebs, Jackson Lewis P.C., Melville, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*; Kuo, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Oleg Gerzhgorin, proceeding *pro se*, sued his former employer, Selfhelp Community Services, Inc., and one of its programs, the Russian Holocaust Survivors Program, for religious discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. The district court adopted in part a magistrate judge's report and recommendation and granted summary judgment to the defendants. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment without deference to the district court, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (per curiam). "Summary judgment is appropriate where no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Guan*

*v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Because Gerzhgorin is *pro se*, we liberally construe his filings, reading them to raise the strongest arguments they suggest. *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (per curiam).

## I.    Retaliation

Our discussion begins with Gerzhgorin's retaliation claims. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" other provisions of Title VII.[1]  42 U.S.C. § 2000e-3(a). To establish a *prima facie* showing on such a claim, a plaintiff must demonstrate that he engaged in protected activity, his employer was aware of that protected activity, he suffered a materially adverse action, and there was a causal connection between the protected activity and the adverse action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*). A complaint constitutes "protected activity" for these purposes if the employee has a "good faith, reasonable belief" that he is opposing an employment practice that violates Title VII. *Id.*[2]

---

[1] Gerzhgorin does not argue on appeal that the district court should have applied a different standard to his NYCHRL retaliation claim. Accordingly, we decline to reach that issue. *See Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) (*per curiam*) (the court "normally will not[] decide issues that a party fails to raise in his or her appellate brief").

[2] In quotations from caselaw and the parties' briefing, this order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

The district court properly concluded that Gerzhgorin failed to establish a genuine dispute of material fact as to whether he experienced unlawful retaliation because, prior to the decision to fire him, his complaints concerned conduct directed towards clients, rather than employees. Conduct directed entirely toward non-employees generally cannot be characterized as an unlawful employment practice by an employer. *See Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134–35 (2d Cir. 1999) (explaining that a police officer's report of other officers' use of racial slurs against black citizens was not protected activity, where officer testified that he had never heard such slurs directed toward an employee). Although such conduct might contribute to a hostile work environment under some circumstances—*see, e.g.*, *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 389 (2d Cir. 2020) ("[C]onduct not directly targeted at or spoken to an individual but purposefully taking place in [that individual's] presence can nevertheless transform [the] work environment into a hostile or abusive one . . . .")—that was not the substance of Gerzhgorin's complaints to his supervisors in this case.

Instead, Gerzhgorin complained to his employers only about whether food provided for clients was strictly kosher and whether music selections for client events were culturally appropriate. As Gerzhgorin acknowledged in his deposition testimony, he did not complain about discrimination against himself,

4

and he offers no evidence to suggest that he complained about discrimination against other employees. Absent evidence that his complaints related to an employment practice toward himself or another employee, Gerzhgorin could not prevail on a retaliation claim. *See Wimmer*, 176 F.3d at 134–35. And although the record reflects that Gerzhgorin later sent an email that might be fairly characterized as a complaint about unlawful religious discrimination, the email cannot support a retaliation claim because he sent it only after his employer already decided to fire him. *See Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (explaining that where decision to take adverse employment action predated a plaintiff's complaint, the adverse action "could not have been in retaliation for" that complaint). Therefore, we affirm the district court's summary judgment for defendants as to Gerzhgorin's retaliation claim.

## II.  Religious Discrimination

To make a prima facie case of religious discrimination under Title VII, Gerzhgorin had to show, among other things, that he "suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of . . . religion . . . ." *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022). The district court correctly concluded there was no genuine dispute of material fact on this issue.

As a preliminary matter, Gerzhgorin argues that the district court overlooked an affidavit that he submitted in opposition to summary judgment, but he has not shown that the affidavit was relevant, nonduplicative, and admissible. *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (explaining that only "admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and hearsay evidence is generally inadmissible). Gerzhgorin also devotes a significant portion of his brief to disputing the "same actor" inference against discriminatory discharge, resting on the understanding that one of the people involved in the decision to fire him had known about his Orthodox Jewish faith when she decided to hire him only a few months earlier. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."). The district court concluded, however, that this inference was not dispositive. Given the absence of other circumstances suggesting discrimination, we agree.

Gerzhgorin argues that antisemitic "slurs" made by supervisors and colleagues in the workplace gave rise to an inference of discrimination, but many of the purportedly antisemitic comments he identifies are facially neutral, such as

6

descriptions of the defendants' clients that Gerzhgorin concedes to be accurate. *Cf. Feingold v. New York*, 366 F.3d 138, 150–51 (2d Cir. 2004) (addressing antisemitic comments that "were not merely the result of religious consciousness, but rather stemmed from anti-Semitic hostility," including comments that were "mocking" or demonstrated "overt animosity"). Gerzhgorin did not present admissible evidence that other alleged statements were made. For example, his testimony that two of his supervisors ridiculed his kashrut observance relied on inadmissible hearsay—namely, a report to him from another employee. *See Porter*, 722 F.3d at 97. Finally, comments by Gerzhgorin's peers do not support an inference of discrimination because Gerzhgorin presented no evidence that the decisionmakers were aware of the comments.

Differences in the way Gerzhgorin's supervisor managed her other direct reports did not suggest discrimination because, unlike Gerzhgorin, those other reports had completed their probationary period. *Cf. Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (explaining that to make a *prima facie* case of discrimination on a disparate treatment theory, a plaintiff must show that employees treated more favorably were similarly situated to the plaintiff, including by showing that they were "subject to the same performance evaluation and discipline standards"). Moreover, Gerzhgorin testified at his deposition that

7

he did *not* believe these differences were related to his religion. And although Gerzhgorin also alleged that only he was required to copy his supervisor on emails to clients, the undisputed evidence established that this was not the case.

Gerzhgorin also argues that he was subjected to discriminatory and bullying conduct, particularly by his direct supervisor. Here, too, there is no genuine dispute of material fact. Although the supervisor initially resisted one of Gerzhgorin's leave requests, she ultimately granted him the time off, and there is no allegation of an overtly antisemitic statement during that exchange. The supervisor's decision to contact Gerzhgorin's clients to evaluate his performance was also facially neutral as to religion.

Some of the evidence came closer to creating a dispute of material fact, but we agree with the district court that it ultimately fell short. Viewing the record in Gerzhgorin's favor, his supervisor's hostile overreaction to his Sukkot presentation to individual clients during an employer-sponsored event might have suggested animus if she had not immediately suggested that he present the same information to the clients as a group. And it was reasonable for Gerzhgorin to view as inappropriate an incident in which the supervisor sold him a bottle of kosher wine received as a gift from a client—an unusual offer that, he testified, was made only to him because the supervisor knew he kept kosher. But no

8

reasonable jury could conclude that this incident gave rise to a reasonable inference of discrimination in the absence of other admissible record evidence that would place it more firmly in an actionable context.

Gerzhgorin also cannot demonstrate that he was treated less well because of his religion, as necessary to prevail on an NYCHRL discrimination claim. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). For the reasons discussed above, Gerzhgorin did not establish a genuine dispute as to whether his religion played *any* role in the decision to fire him. Even if other incidents, such as the offer to sell the wine, might have been motivated by religion, summary judgment is still warranted if an employer "shows that a reasonable jury could conclude only that the conduct amounted to no more than a petty slight." *Id.* at 111. Such is the case here.

### III.    Hostile Work Environment

Finally, we agree with the district court that the record failed to establish a genuine dispute of fact as to whether Gerzhgorin was subject to a hostile work environment.[3]   To prevail on such a claim, a plaintiff must show misconduct that

---

[3] It is therefore unnecessary for us to address the district court's alternative ruling that Gerzhgorin failed to timely assert a hostile work environment claim.

is "severe or pervasive enough to create an objectively hostile or abusive work environment." *Feingold*, 366 F.3d at 150. The plaintiff must also show that this misconduct occurred because of his protected characteristic, and that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Factors relevant to whether a workplace is objectively hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Feingold*, 366 F.3d at 150. The facts that might have established a hostile work environment are the same facts that were insufficient to prevail on Gerzhgorin's discrimination claims. As discussed above, the record contains a few minor incidents of misconduct at most, which is insufficient to avoid summary judgment. *See id*.

We have considered Gerzhgorin's other arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court